IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONICA HATCHER, ) | |
| ) | No. 15 C 7786 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Veronica Hatcher appeals defendant's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision and remands this case for further proceedings.

## Background

Plaintiff filed an application for benefits on May 9, 2013, alleging a disability onset date of June 26, 2012.[2] (R. 235.) Her application was denied initially on August 2, 2013, and again on reconsideration on March 6, 2014. (R. 168-73.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 3, 2015. (R. 77-132.) On March 13, 2015, the ALJ issued a decision denying plaintiff's application. (R. 34-68.) The Appeals Council denied review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

---

[1] On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited July 27, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

[2] Plaintiff later amended her disability onset date to May 23, 2013. (*See* R. 80-82.)

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) if not, whether she is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (R. 36.) At step two, the ALJ found that plaintiff had the severe impairments of "obesity; depression/bipolar disorder; post-traumatic stress disorder (PTSD); congenital right eye blindness; sleep apnea; degenerative joint disease of the knee; [and] sciatica." (*Id.*) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 37.) At step four, the ALJ found that plaintiff could not perform her past relevant work but had the residual functional capacity to perform sedentary work with additional restrictions. (R. 39, 66.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, and thus she was not disabled. (R. 66-67.)

Plaintiff contends the ALJ erred in giving "little weight" to the opinion of plaintiff's treating physician, Dr. Forys. (*See* R. 65.) An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require [him] to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion," in assessing the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

Among other things, Dr. Forys said that plaintiff's complaints of severe knee pain were corroborated by cracking and popping in the knees, a positive x-ray for joint space narrowing, and a positive straight leg raise test. (R. 1966.) He also noted that plaintiff's pain was

3

precipitated by walking and prolonged sitting, and thus he limited her to sitting for two hours and walking for one hour of an eight-hour workday. (R. 1967.) Dr. Forys opined that plaintiff's pain would frequently interfere with her concentration and attention and would cause her to miss work more than three times a month. (R. 1970-71.)

The ALJ rejected Dr. Forys' opinion because:

> [He] relied quite heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed to uncritically accept as true most, if not all, of what [plaintiff] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [plaintiff's] subjective complaints. For example, Dr. Forys noted that [plaintiff] had side effects from medication, yet [plaintiff] denied such in her testimony. Further, had such medications caused side effects, it would have been reported in the records and or changed to one that did not cause side effects. There is no report of "good days" and "bad days" in Dr. Forys' records. Further, because the records and findings are so contradictory, the doctor's opinion is without substantial support from the other evidence of record, or even his own record, which obviously renders it less persuasive.

(R. 65.)

Focusing on the perceived contradictory nature of the underlying medical records, it is true that some of Dr. Forys' records state that plaintiff denied having knee pain. However, such notes generally appear in records of visits that were prompted by issues wholly unrelated to her knees. (*See, e.g.*, R. 475, 488, 640, 676, 1654-55 (showing that plaintiff did not complain of knee pain when she went to the doctor for a sore throat and cough, perianal pain, a keloid on her right foot, for treatment after a sexual assault, and a rash on her breasts, respectively).) Moreover, though plaintiff did not complain about her knees each time she saw Dr. Forys, the record shows that she did so on a regular basis from October 2011 through November 2014. (*See* R. 441, 455-58, 470, 482, 498-501, 503-06, 649, 655, 662, 669, 1352, 1357, 1362, 1554, 1567-68, 1575, 1598-1600, 1606-07, 1625-27, 1639, 1647-48.) More importantly, the record shows that when Dr. Forys' treatment focused on plaintiff's knees, his clinical findings

consistently supported her complaints of pain and decreased function. (*See e.g.*, R. 455-58 (April 18, 2012 record noting "crepitus,[3] decreased extension, decreased flexion, pain with exten[s]ion and pain with flexion" in both knees); R. 470-73 (February 28, 2012 record noting same and mild effusion[4]); R. 482-85 (January 11, 2012 record noting "crepitus, decreased extension, decreased flexion, pain with exten[s]ion and pain with flexion" in both knees); R. 499-501 (December 3, 2011 noting same and mild effusion); R. 503-06 (October 21, 2011 record noting crepitus, decreased extension and flexion and pain with extension and flexion in both knees); R. 649-53 (April 27, 2013 record noting crepitus and decreased extension and flexion in both knees); R. 655-59 (April 6, 2013 record noting crepitus in both knees, pain with extension in right knee, and decreased flexion in left); R. 662-66 (March 9, 2013 noting same); R. 669-73 (January 3, 2013 record noting crepitus, and decreased extension and flexion in both knees); R. 1357-60 (February 8, 2014 record noting crepitus in both knees); R. 1362-66 (January 6, 2014 record noting crepitus and decreased extension and flexion in both knees); R. 1352-55 (March 8, 2014 record noting tenderness and decreased extension and flexion in both knees); R. 1647-49 (April 16, 2014 record noting clicking, popping, and decreased extension and flexion in both knees); R. 1639-41 (May 23, 2014 record noting clicking, popping, and decreased extension and flexion in both knees); R. 1625-27 (June 27, 2014 record noting same); R. 1606-07 (July 28, 2014 record noting same); R. 1598-1600 (August 27, 2014 record noting same and mild effusion). Many of these findings by Dr. Forys were not based on "uncritical acceptance" of plaintiff's subjective reports, but rather clinical findings. Thus, the record does not support the ALJ's refusal to give controlling weight to Dr. Forys' opinion.

---

[3] Joint crepitus is "the grating sensation caused by the rubbing together of the dry synovial surfaces of joints." *Dorland's Illustrated Medical Dictionary* at 429 (32d ed. 2012).

[4] Effusion is "the escape of fluid into a part or tissue." *Dorland's Illustrated Medical Dictionary* at 595 (32d ed. 2012).

Even if the record did support not giving controlling weight to Dr. Forys's opinion, the ALJ's analysis would still be erroneous because he did not assess Dr. Forys opinion using the required regulatory factors. *See* 20 C.F.R. § 404.1427(c) (stating that an ALJ "will evaluate every medical opinion" by considering the nature, extent, and length of the treatment relationship, the frequency of examination, the physician's specialty, and the consistency and supportability of the opinion). Given that Dr. Forys treated plaintiff nearly monthly for several years and the only contrary opinion in the record is from a non-examining source (*see* R. 142-44), the ALJ may well have given Dr. Forys' opinion more weight, if he had assessed it in accordance with the regulations. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (stating that "a contradictory opinion of a non-examining physician [is] not, by itself," a sufficient basis for rejecting a treater's opinion).

The ALJ also "discounted" the opinion of plaintiff's treating psychiatrist, Dr. Eler, because it "appears to rest at least in part on assessment of [physical] impairment(s)," an area outside of her expertise, and "many of [her] statements are contradictory and appear [to] have been generated in getting favorable accommodation in the workplace and or reduced RTA fare." (R. 65.) As an initial matter, the ALJ does not identify the statements that are contradictory or explain why letters seeking accommodations are inherently suspect. Further, even if Dr. Eler lacks the expertise to opine on plaintiff's physical limitations, the ALJ still did not explain why he rejected the opinions she gave about plaintiff's mental limitations, specifically that plaintiff: (1) has bipolar disorder with episodic psychosis; (2) has "[decreased] attention, focus, [and] concentr[ation]"; (3) is "easily distracted [and] interrupted"; (4) is "[e]xtremely sensitive and reactive to supervisors and coworkers"; (5) has "serious limitations" in her ability to perform tasks autonomously and on a sustained basis; (6) has "minimal" productive, goal-oriented

6

activity; (7) is subject to "chronic exacerbations" of her condition; (8) has "mod[erate to] marked limitations in basic emotional functioning in work environment (even ability to perform basic work related activities"; and (9) is "[i]ncapable of [tolerating] even low stress." (R. 1071, 1073-74, 1197-1204.) Because the ALJ failed to offer *any* reasons for discounting the opinion of the psychiatrist who treated plaintiff on a regular basis for four years, this case must be remanded. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("An ALJ must offer good reasons for discounting the opinion of a treating physician.") (quotation omitted).

Plaintiff also challenges the ALJ's credibility determination and reliance on vocational expert testimony, issues that depend, at least in part, on a proper assessment of the medical evidence. Thus, the ALJ must revisit these issues on remand as well.

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [17], denies the Commissioner's motion for summary judgment [26], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**     **ENTERED:** July 27, 2017

_M. David Weisman_
**M. David Weisman**
**United States Magistrate Judge**

Case: 1:15-cv-07786 Document #: 30 Filed: 07/27/17 Page 8 of 8 PageID #:2456